1

2

3

4

5

6          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
7                    AT SEATTLE

8    SHANE SKJOLD,

9                              Petitioner,          Case No. C16-1349-RSL-MAT

10              v.

11   PAT GLEBE,                                      REPORT AND RECOMMENDATION

12                              Respondent.

13

14           INTRODUCTION AND SUMMARY CONCLUSION

15          Petitioner Shane Skjold is a state prisoner who is currently confined at the Washington

16   Corrections Center in Shelton, Washington.  He seeks relief under 28 U.S.C. § 2254 from a 2012

17   King County Superior Court judgment and sentence.  Respondent has filed an answer to the

18   petition and has submitted relevant portions of the state court record.  Petitioner has not filed any

19   response to respondent's answer, despite having been provided ample time to do so.  This Court,

20   having carefully reviewed petitioner's petition, respondent's answer thereto, and the balance of

21   the record, concludes that petitioner's petition for writ of habeas corpus should be denied and this

22   action should be dismissed with prejudice.

23   / / /

REPORT AND RECOMMENDATION - 1

# FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying petitioner's conviction as follows:

> On December 2, 2011, at around 2:00 a.m., Richard Romero, Jr. was awakened from his sleep by a pounding on his apartment door. Romero was the maintenance person at the apartment complex and thought the knock was by a tenant who was having an emergency, so he walked into the living room, unlocked the door, and opened it. When Romero opened the door, appellant Shane Skjold walked into the living room, grabbed Romero by the throat, pushed him to the ground, pulled out a knife from underneath his sweatshirt, and repeatedly asked Romero "where his stuff was." Skjold kneeled over Romero and waved the knife in front of him. While this was happening, Romero's 9-year-old son was sitting in a chair in the living room and started crying. Romero was very scared and did not know what Skjold was talking about.

> Romero managed to get up, and Skjold told him they needed to go to Skjold's apartment because there was "stuff" missing from his apartment. Before they left, Skjold asked Romero to give him the key to his (Skjold's) apartment. Romero gave Skjold the key and the two men went to Skjold's apartment.

> Inside Skjold's bedroom, Skjold was upset and said that somebody had taken something from his closet. He started throwing drawers. He told Romero, "It's gone. It's gone." Skjold accused Romero of taking whatever he was talking about. Romero tried to calm Skjold down and convince him that he had not taken anything from his apartment. Skjold, who had been pacing in the bedroom, got quiet, bent over as if he was going to pick something up, stood up, and hit Romero on the side of the face. The punch completely collapsed most of the bones on the left side of Romero's face and caused eight separate fractures.

> After the punch, Romero, who was bleeding profusely from the face, felt "trapped" and told Skjold he would not say anything about the incident. Skjold told Romero he could leave, and Romero returned to his apartment.

> The next morning, Romero called his father, who drove him to the hospital. Romero told his father what had happened to him the previous night. At first, Romero told the hospital personnel that he had slipped, but when they expressed disbelief that a slip could result in such serious injuries, he said he had been assaulted. From the hospital, Romero and his father went to the father's house; from there, Romero's mother drove him to the police station, where he gave a statement.

> The State charged Skjold with first degree burglary with a deadly weapon

REPORT AND RECOMMENDATION - 2

enhancement, second degree assault with a deadly weapon enhancement, and unlawful imprisonment. A jury found Skjold guilty as charged. The court sentenced Skjold to an exceptional sentence of 229 months because, due to Skjold's high offender score, a standard range sentence would have allowed some crimes to go unpunished.

(Dkt. 17, Ex. 2 at 1-3.)

PROCEDURAL BACKGROUND

Petitioner appealed his judgment and sentence to the Washington Court of Appeals. (*See id.*, Exs. 3-9.) In the opening brief prepared by petitioner's appellate counsel, petitioner asserted that (1) the charging document was constitutionally defective because it failed to include all essential elements of the unlawful imprisonment charge, and (2) there was insufficient evidence to support petitioner's first degree burglary conviction because the State failed to prove that petitioner "unlawfully remained" in the apartment. (*Id.*, Ex. 3 at 1.)

Petitioner also submitted a *pro se* statement of additional grounds in which he identified six additional assignments of error. Specifically, petitioner asserted that: (1) his trial counsel rendered ineffective assistance when he failed to object to hearsay testimony at trial; (2) his appellate counsel rendered ineffective assistance when she filed the opening brief without obtaining and reviewing all relevant trial transcripts; (3) he was not provided with a sufficient record on appeal; (4) he was deprived of his right to due process where several instances of prior bad acts were admitted at trial in violation of a ruling on a pretrial motion in limine; (5) the trial court improperly calculated his offender score by failing to find the crimes constituted the same criminal conduct; and, (6) his sentence amounts to cruel and unusual punishment. (*Id.*, Ex. 5 at 1.)

Petitioner raised one final argument in a supplement to his statement of additional grounds; *i.e.*, that his deadly weapon enhancements were not authorized where the knife at issue was 2½ inches long and the legislature, for purposes of the enhancement statute, defined a deadly weapon

as having a blade longer than 3 inches. (Dkt. 17, Ex. 8.) On October 14, 2013, the Washington Court of Appeals issued an unpublished opinion affirming petitioner's judgment and sentence. (*Id*., Ex. 2.)

Petitioner thereafter filed a petition for review in the Washington Supreme Court in which he presented four issues for review: (1) the charging document was defective with respect to the unlawful imprisonment charge because it omitted an essential element of the crime; *i.e*., knowledge that the restraint was unlawful; (2) the trial court violated petitioner's due process right to a fair trial when it denied petitioner's motion for a mistrial; (3) defense counsel provided ineffective assistance in failing to object to hearsay statements; and (4) the trial court erred in failing to treat the current offenses as "same criminal conduct" for purposes of computing the offender score. (*See id*., Ex. 10 at 1, 6-7.) The Supreme Court denied petitioner's petition for review without comment on September 3, 2014, and the Court of Appeals issued its mandate terminating direct review on September 17, 2014. (*Id*., Exs. 12, 13.)

In May 2015, petitioner filed a personal restraint petition in the Washington Court of Appeals in which he presented essentially a single ground for review; *i.e*., the evidence was insufficient to support petitioner's conviction for first degree burglary and, thus, his conviction violated due process. (*See id*., Ex. 14, Opening Brief at 3-10.) The Court of Appeals issued an order dismissing the petition on September 28, 2015. (*Id*., Ex. 16.)

Petitioner next filed a motion for discretionary review in the Washington Supreme Court. (*Id*., Ex. 17.) Petitioner argued to the Supreme Court that because the state's own evidence proved that he had lawfully entered the victim's apartment as a "business invitee," there was insufficient evidence to prove the burglary charge. (*See* Dkt. 17, Ex. 17.)

The Supreme Court Commissioner issued a ruling denying review on May 16, 2016, and

REPORT AND RECOMMENDATION - 4

the Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on August 26, 2016. (*Id.*, Exs. 18, 19.) Petitioner now seeks federal habeas review of his judgment and sentence.

GROUNDS FOR RELIEF

Petitioner identifies the following four grounds for relief in his federal habeas petition:

A.   THE EVIDENCE IS INSUFFICIENT TO SUPPORT PETITIONER'S CONVCTION FOR FIRST DEGREE BURGLARY.

B.   PETITIONER WAS NOT PROVIDED WITH HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

C.   PETITIONER WAS DENIED A FUNDAMENTALLY FAIR TRIAL WHERE PROPENSITY EVIDENCE WAS PRESENTED BEFORE THE JURY.

D.   THE ACCUMULATION OF SEVERAL ERRORS REQUIRES REVERSAL OF PETITIONER'S CONVICTION.

(*See* Dkt. 4 at 25, 31, 42, 51.)

DISCUSSION

Respondent asserts in his answer to the petition that petitioner has properly exhausted some, but not all, of his federal habeas claims. Specifically, respondent asserts that petitioner properly exhausted claims one and two, and the part of claim three regarding presentation of evidence of DOC supervision, but that he failed to exhaust the part of claim three regarding testimony from Scott Rainford, and the entirety of claim four. Respondent argues that the petition therefore constitutes a mixed petition containing both exhausted and unexhausted claims, and that the Court should therefore advise petitioner of his available options for proceeding with this action. Respondent further argues that the state courts reasonably denied petitioner's exhausted claims.

/ / /

REPORT AND RECOMMENDATION - 5

Exhaustion/Mixed Petition

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted). In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

"If a habeas petition is 'mixed' such that it includes both unexhausted and exhausted claims, a district court must dismiss it, leaving the petitioner an option to either abandon the unexhausted claims or return to state court to exhaust them." *Ybarra v. McDaniel*, 656 F.3d 984, 997 (9th Cir. 2011) (citing *Rose v. Lundy*, 455 U.S. 509, 510 (1982)). When a federal habeas petitioner "fail[s] to present his claims in state court and can no longer raise them through any state procedure, state remedies are no longer available, and are thus exhausted." *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002).

While respondent argues that petitioner's petition constitutes a mixed petition containing both exhausted and unexhausted claims, the record does not support this argument. The record confirms that petitioner did not present the part of claim three regarding testimony from Scott Rainford, or claim four, to the state courts for review. However, it does not appear that petitioner has any state remedies available to him at this juncture. RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year

after the judgment becomes final.  Petitioner's conviction became final for purposes of state law on September 17, 2014, the date the Court of Appeals issued its mandate terminating direct review. (*See* Dkt. 17, Ex. 13.)  It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claims and, in fact, that petitioner would have been barred from returning to the state courts at the time he filed his federal habeas petition in August 2016.  *See* RCW 10.73.090.

Because state remedies are no longer available to petitioner, the part of his third ground for relief which respondent argues was never presented to the state courts, and the entirety of petitioner's fourth ground for relief, must be deemed technically, if not properly, exhausted. Although technically exhausted claims may also be procedurally defaulted, *see Coleman v. Thompson*, 501 U.S. 722, 732, 735 n. 1, respondent did not raise the issue of procedural default in his answer and he has therefore forfeited the issue, *see Franklin*, 290 F.3d at 1229-31.  As it appears that the entirety of petitioner's federal habeas petition is exhausted, the petition is not a mixed petition and the Court will therefore address the merits of each of petitioner's grounds for relief.

<u>Standard of Review</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id.* at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

/ / /

REPORT AND RECOMMENDATION - 8

Petitioner asserts in his first ground for relief that the evidence presented at his trial was insufficient to support his conviction on the charge of burglary in the first degree. (Dkt. 4 at 25.)

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v. California*, 491 U.S. 263, 265 (1989) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). When evaluating a claim of insufficiency of the evidence, a reviewing court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S.Ct. 2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 319).

The Supreme Court emphasized in *Jackson* that constitutional sufficiency review is sharply limited and that the reviewing court owes great deference to the trier of fact. *Id*. In a federal habeas proceeding, the reviewing court also owes deference to the state courts' adjudication of the *Jackson* claim. *Coleman*, 132 S.Ct. at 2062. Under *Jackson*, federal courts look to state law for the substantive elements of the offense, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *See id*. at 2064.

Washington's first degree burglary statute reads as follows:

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.

REPORT AND RECOMMENDATION - 9

RCW 9A.52.020(1). For purposes of the Washington burglary statutes, "[a] person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2).

Petitioner asserts that the testimony of the victim in this case, Robert Romero, Jr., establishes that petitioner entered Mr. Romero's apartment by invitation and that the invitation was not revoked. (Dkt. 4 at 26-27.) Thus, petitioner argues, there was no evidence that he "entered or remained unlawfully" in Mr. Romero's apartment. (*Id.*)

The Washington Court of Appeals rejected this claim on direct appeal. The court identified the proper standard for evaluating sufficiency of the evidence claims, and then explained its conclusion as follows:

> Contrary to Skjold's argument, there is no evidence that Romero invited Skjold into his apartment. Rather, the evidence shows that when Romero heard the pounding on the door to his apartment, he opened it to see if it was a tenant having an emergency. When Romero opened the door, Skjold walked into the apartment, grabbed Romero by the throat, pushed him to the ground, and pulled a knife. According to Romero, very little time passed as these events unfolded and Romero "pretty much went right down on the ground." We find no evidence to support Skjold's contention that he was invited into Romero's apartment. The evidence, viewed in a light most favorable to the State, was sufficient to support Skjold's conviction of first degree burglary.

(Dkt. 17, Ex. 2 at 5.)

Petitioner argues in his memorandum of law in support of his habeas petition that the Court of Appeals ignored important facts in determining that there was no invitation. (Dkt. 4 at 30.) Specifically, petitioner notes that Mr. Romero worked as a maintenance man in the apartment building where petitioner was a tenant, that Mr. Romero opened the door to his apartment and let petitioner and a friend of Mr. Romero's enter, that Mr. Romero never asked petitioner to leave the apartment, and that Mr. Romero agreed to accompany petitioner to his apartment so that petitioner

REPORT AND RECOMMENDATION - 10

could show Romero where the missing money had been kept. (*Id*. at 30-31.) Petitioner, in making this argument, is essentially advocating that this Court review the evidence presented at trial in the light most favorable to him. However, that is not the proper standard for evaluating a sufficiency of the evidence claim. The applicable standard, as noted above, requires that the evidence be viewed in the light most favorable to the prosecution. This Court's review of the trial transcript confirms that the jurors in petitioner's case could reasonably infer, based on Mr. Romero's testimony, that petitioner was at no point invited to enter or remain in Mr. Romero's apartment.

Petitioner's assertion that an implied invitation existed because Mr. Romero opened the door and did not try to prevent petitioner from entering, is contrary to the evidence presented at trial. (*See* Dkt. 4 at 31.) The jury obviously credited Mr. Romero's testimony that he opened the door to the pounding of an unknown individual (Dkt. 17, Ex. 20 at 28-30), that upon doing so petitioner grabbed him by the throat, pushed him to the floor, and threatened him with a knife (*id*., Ex. 20 at 32-33), and that these events all happened very quickly (*id*., Ex. 20 at 33). This evidence does not suggest that there was any invitation, implied or otherwise.

The state courts applied the appropriate standard in evaluating petitioner's sufficiency of the evidence claim, and reasonably concluded that, based upon the evidence presented at trial, a rational trier of fact could find all of the necessary elements of burglary in the first degree. Petitioner identifies no United States Supreme Court case law which requires a different result. Accordingly, petitioner's federal habeas petition should be denied with respect to his first ground for federal habeas relief.

<u>Ineffective Assistance of Trial Counsel</u>

Petitioner asserts in his second ground for relief that he was denied the effective assistance of trial counsel when counsel failed to object to inadmissible testimonial hearsay statements which

REPORT AND RECOMMENDATION - 11

were admitted at trial and implicated petitioner's confrontation rights. (Dkt. 4 at 34.) At issue in this claim is testimony from a police officer, Vincent Domingcil, and a neighbor of petitioner's, Robert Salse, about statements made by petitioner's girlfriend, Abigail Pitblado, in relation to an apparent domestic dispute that occurred on the same morning as the assault on Mr. Romero.[1] (*See id*. at 37.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Id*. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to

---

[1] Petitioner attempts to insert into his ineffective assistance of counsel claim a challenge to alleged improper testimony by yet another prosecution witness, Scott Rainford. This challenge was not a part of the ineffective assistance of counsel claim presented to the state courts. Petitioner makes a related, and also unexhausted, claim concerning Mr. Rainford's testimony in his third ground for relief. The Court will address all of petitioner's claims regarding Mr. Rainford's testimony in a separate section below.

REPORT AND RECOMMENDATION - 12

counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

The Washington Court of Appeals rejected petitioner's ineffective assistance of counsel claim on direct appeal. The Court of Appeals identified the *Strickland* standard as the starting point for its discussion, and then concluded that counsel's failure to object to the admission of the testimonial hearsay statements did not amount to deficient performance because the statements at issue were not central to the state's case, and because the decision not to object was a valid trial tactic. (*See* Dkt. 17, Ex. 2 at 6.) The Court of Appeals went on to conclude that even if counsel's performance was deficient for failing to object, petitioner had not demonstrated that the outcome of the trial would have been different absent the alleged deficient performance. (*Id*., Ex. 2 at 6-7.)

As noted above, the testimony at issue in petitioner's ineffective assistance of counsel claim was that offered by Bothell Police Officer Vincent Domingcil and by petitioner's neighbor

Robert Salse concerning statements attributed to petitioner's girlfriend, Abigail Pitblado, in relation to a domestic disturbance that occurred at petitioner's apartment on the same morning as the incident giving rise to the charges at issue in this case. Officer Domingcil testified that on December 2, 2011, at approximately 5:00 a.m., he responded to a 911 call reporting a domestic disturbance at petitioner's apartment. (*See id.*, Ex. 22 at 55, 57-58.) Officer Domingcil further testified that after he arrived at the apartment, he contacted Ms. Pitblado who was extremely intoxicated and upset. (*Id.*, Ex. 22 at 59-60.) According to Officer Domingcil, Ms. Pitblado reported to him that she was upset because there was $5000 missing from her apartment. (*Id.*, Ex. 22 at 59-60, 65.) Officer Domingcil testified that when he asked Ms. Pitblado whom she had been with that morning she offered two names, "Jeffy, J-e-f-f-y, and Shane." (*Id.*, Ex. 22 at 61.)

While petitioner's counsel did interpose an objection when Officer Domingcil was asked by the prosecutor whether there had been any reports, in relation to the 911 call, about individuals leaving the area (*see* Dkt 17, Ex. 22 at 58), counsel did not object to the testimony regarding who Ms. Pitblado reported had been in her apartment that morning.

Two days after Officer Domingcil testified, petitioner's neighbor Robert Salse was called to testify by the prosecution. (*See id.*, Ex. 21 at 52.) Mr. Salse testified that he was awoken by yelling and screaming in the apartment next door to his, and that he heard "Abby" loudly screaming "Please don't hurt me, he's trying to hurt me, he's trying to kill me." (*Id.*, Ex. 21 at 56.) Mr. Salse further testified that he heard Ms. Pitblado say at least two or three times "I don't have your money." (*Id.*, Ex. 21 at 56.) Petitioner's counsel did not object to any of Mr. Salse's testimony, but counsel did cross-examine Mr. Salse regarding inconsistencies between his testimony at trial and his prior statement to the police. (*Id.*, Ex. 21 at 63-64.)

Later the same day, after the jury had been excused, the trial judge queried counsel

REPORT AND RECOMMENDATION - 14

regarding Mr. Salse's testimony. (*Id.*, Ex. 21 at 94.) The judge first noted that during the course of Mr. Salse's testimony certain statements were attributed to Ms. Pitblado, a potential witness who had been released from her subpoena to appear and testify by both the prosecution and the defense. (*Id.*) The judge went on to note that Mr. Salse's testimony could have been the subject of some hearsay objections by the defense with respect to statements attributed to Ms. Pitblado. (*Id.*) The judge acknowledged that the failure to object could be a matter of trial strategy, and he invited petitioner's counsel to comment on whether the absence of any objection to the testimony of Mr. Salse, particularly with respect to the testimony attributing statements to Ms. Pitblado, was a matter of defense strategy. (*Id.*, Ex. 21 at 94-95.) Petitioner's counsel responded as follows:

> I think you have it right, your honor, when you say there is a tactical reason for not doing that. I was able to turn around and impeach him based on those statements. Also, some of that stuff you are right, it was cumulative, but there is a tactical reason for allowing some of those statements to be admitted.

(Dkt. 17, Ex. 21 at 95.) The judge acknowledged counsel's explanation and noted that he simply wanted to ensure that such information was a part of the court record. (*Id.*)

The following day, the prosecutor returned to the issue, noting the court's effort to make a record regarding the hearsay evidence. (*See id.*, Ex. 23 at 3.) The prosecutor observed that when hearsay was called for from Officer Domingcil and from Mr. Salse regarding statements attributed to Ms. Pitblado, he believed that a foundation had been established for an excited utterance or a present sense impression.[2] (*Id.*, Ex. 23 at 3-4.) Petitioner's counsel, in response to the prosecutor's observations, explained that "while I didn't object at the time, I was viewing these as excited utterances and was under the impression they would come in. Now, maybe I should have objected

---

[2] The prosecutor referenced a third witness as well, Ms. Carlson, but petitioner does not present any challenge to Ms. Carlson's testimony in this federal habeas proceeding. (*See* Dkt. 17, Ex. 23 at 3-4.)

at the time, but I think they would have been admitted regardless, and I do have a reason for wanting them in." (*Id.*, Ex. 23 at 5.) After hearing from counsel, the trial court indicated that "there likely would have been a sufficient foundation that was there to admit those statements as excited utterances or present sense impressions." (*Id.*, Ex. 23 at 6.)

The record makes clear that counsel had strategic reasons for not objecting to the admission of the challenged hearsay statements. Though counsel did not detail those reasons in his comments before the trial court, this Court presumes that counsel's strategic decisions were reasonable. *See Strickland*, 466 U.S. at 689. Petitioner fails to rebut this presumption. The record also suggests that even if counsel had objected, the statements would have come in under an exception to the hearsay rule. Thus, counsel's failure to object resulted in no apparent prejudice. The Court of Appeals reasonably rejected petitioner's ineffective assistance of trial counsel claim on direct appeal. Accordingly, petitioner's federal habeas petition should be denied with respect to his second ground for relief.

## Right to a Fair Trial

Petitioner asserts in his third ground for relief that he was denied his right to a fundamentally fair trial when the trial court denied a defense motion for a mistrial after a prosecution witness, Detective Cyrus O'Bryant, violated a pretrial ruling that petitioner's statements about being under DOC supervision were inadmissible. (Dkt. 4 at 42.) Petitioner maintains that the trial court's denial of the motion for mistrial was irrational and irresponsible because the detective's testimony constituted irrelevant and prejudicial propensity evidence. (*See id.* at 42-45.)

Due Process guarantees "the fundamental elements of fairness in a criminal trial." *Estelle v. McGuire*, 502 U.S. 62, 70 (1991) (quoting *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967)).

Where a habeas petitioner challenges a trial court's denial of a motion for a mistrial based upon a prosecution witness's improper testimony, the petitioner must show that the alleged error resulted in a trial that was fundamentally unfair. *See id.* at 70-71, 75; *Hayes v. Ayers*, 632 F.3d 500, 515 (9th Cir. 2011) (1991).

The Washington Court of Appeals rejected petitioner's claim regarding the trial court's refusal to grant mistrial, explaining its conclusion as follows:

> During Detective Cyrus O'Bryant's testimony, the following colloquy occurred:

> Q.      And what did he say about the knife?

> A.      He said the knife wasn't his, and he was very specific. He said because he's under DOC super –
> Q.      Wait.

> [PROSECUTOR]:      Move to strike.

> THE COURT:      Motion granted.

> At the end of the day's testimony, out of the presence of the jury, defense counsel moved for a mistrial, arguing that the detective's statements ran afoul of ER 404(b). The trial court denied the motion for a mistrial. In his SAG, Skjold argues that the denial of his motion for a mistrial was error.

> The trial court should grant a mistrial "only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." Factors to consider in determining whether a trial irregularity prejudiced a defendant's right to a fair trial are (1) the seriousness of the irregularity, (2) whether it involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard the irregularity. We review the trial court's denial of a motion for mistrial for an abuse of discretion, finding such an abuse only if "'no reasonable judge would have reached the same conclusion.'"

> The trial court's denial of Skjold's motion for mistrial was not an abuse of discretion and was not a conclusion that no reasonable judge would have reached. The detective did not complete the word "supervision" and the trial court immediately struck the comment from the record. We cannot say that the detective's truncated statement so prejudiced Skjold that nothing short of a new trial can ensure that he will be fairly tried.

REPORT AND RECOMMENDATION - 17

(Dkt. 17, Ex. 2 at 8-10 (footnotes omitted).)

The transcript of petitioner's trial, which this Court has reviewed in its entirety, amply supports the Court of Appeals' conclusion that Detective O'Bryant's testimony did not render petitioner's trial so fundamentally unfair as to require a mistrial. As noted by the Court of Appeals, Detective O'Bryant did not even complete the challenged statement before the prosecutor halted the detective's testimony and moved to strike it. (*See id.*, Ex. 20 at 148.) The prosecution's motion was granted, and the prosecutor immediately moved on to a different topic. (*Id.*) This Court notes as well that the reference to DOC supervision was not only incomplete, it was isolated, occurring only once during the entirety of the trial. These facts do not suggest any prejudice to petitioner's right to a fair trial.

Moreover, the trial court instructed the jury at the start of the trial that it was to "disregard any evidence which either is not admitted or which may be stricken by me." (Dkt. 17, Ex. 22 at 53.) Jurors are presumed to follow their instructions, *Kansas v. Marsh*, 548 U.S. 163, 179-80 (2006), *Richardson v. Marsh*, 481 U.S. 200, 206 (1987), and nothing in the record before this Court suggests that they did not do so in this instance. Petitioner fails to identify any United States Supreme Court authority which requires a result different from that reached by the state courts on his challenge to the denial of his motion for mistrial. Accordingly, petitioner's federal habeas petition should be denied with respect to his third ground for relief.

## Testimony of Scott Rainford

As noted above, petitioner has presented challenges to the testimony of prosecution witness Scott Rainford in both his second and third grounds for relief. Specifically, petitioner asserts that the admission of hearsay testimony from Mr. Rainford violated his right to the presumption of innocence and to a fair trial. (*See* Dkt. 4 at 45.) Petitioner further asserts that his trial counsel

rendered ineffective assistance when he failed to object to Mr. Rainford's testimony. (*Id*. at 37, 39-40.) These claims were never presented to the state courts for review. However, the claims are now technically exhausted because petitioner no longer has state remedies available to him. Respondent has not raised any procedural bar argument with respect to the claims and, thus, the Court will address the claims on the merits despite petitioner's failure to properly exhaust.

During a hearing on pretrial motions, the parties addressed the possible testimony of both Mr. Rainford and his wife Erica[3] in relation to the knife used in the assault on Mr. Romero. (Dkt. 17, Ex. 22 at 20-23.) At issue was a "knife necklace" seized during a search of petitioner's apartment, and questions about whether that knife could be identified as the knife used in the assault. (*See id*., Ex. 22 at 15-18.) The prosecutor explained that the purpose of the Rainford's testimony was to establish that they had seen petitioner with a knife necklace during a prior altercation and thereby rebut petitioner's assertion that he was never in possession of the knife necklace. (*See id*., Ex. 22 at 20-23.)

Mr. Rainford's wife testified first. During her testimony, Ms. Rainford explained that there was an occasion approximately a month prior to the incident in which Mr. Romero was injured when she went to petitioner's apartment and saw him inside the apartment "wearing his boxers and a necklace that had a knife in it." (*Id*., Ex. 20 at 63-64.) Ms. Rainford identified the necklace knife that was in evidence as the knife she had seen petitioner wearing. (*See id*., Ex. 20 at 64-65.) She went on to testify that her husband was with her at the time she saw petitioner wearing the knife, and that petitioner unsheathed the blade while she was watching him. (*Id*., Ex. 20 at 65-66.) When asked where her husband was when petitioner unsheathed the knife, she responded "Next

---

[3] Scott Rainford's wife identified herself as Erica Roberts at trial, but explained that Rainford was her married name, she had just not legally changed her name at that point. (Dkt. 17, Ex. 20 at 61.)

to me closer to the door. He didn't see it. I did and told him to run upstairs." (*Id*., Ex. 20 at 66.)

Mr. Rainford testified immediately following his wife. During his testimony, Mr. Rainford explained that approximately a month prior to the time Mr. Romero was injured he had "a little run-in with Shane." (*Id*., Ex. 20 at 69.) Mr. Rainford then clarified that it was actually his wife who had been involved in some sort of incident with petitioner's girlfriend. (Dkt. 17, Ex. 20 at 69.) Mr. Rainford testified that he went down to petitioner's apartment with his wife, and that he exchanged words with petitioner through the window of the apartment. (*Id*.) Mr. Rainford further testified that petitioner then started towards the door of the apartment and his wife said, "Take off. He's got a knife." (*Id*., Ex. 20 at 69-70.) Mr. Rainford indicated that he did see something around petitioner's neck, "like a black necklace thing," but that he didn't pay attention to what it was. (*Id*., Ex. 20 at 70-71.)

Petitioner claims that Mr. Rainford's testimony regarding his wife's out-of-court statements pertaining to her run-in with petitioner was designed to put evidence of alleged other bad acts before the jury, and he complains that the witness to these alleged bad acts, Ms. Rainford, was a witness who did not appear at trial. (*See* Dkt. 4 at 39-41.) Petitioner also claims that he was prejudiced by his counsel's failure to object to Mr. Rainford's testimony. However, the record makes clear that Ms. Rainford did, in fact, testify at petitioner's trial, and that Mr. Rainford's testimony largely corroborated that of his wife. Mr. Rainford's testimony more clearly indicated that the prior incident involving his wife, petitioner, and the knife was related to a dispute of some sort, but the testimony did not highlight the dispute or provide any substantive details regarding that dispute.

And, while petitioner's counsel did not object to any of Mr. Rainford's testimony, he did elicit testimony from Mr. Rainford on cross-examination to the effect that petitioner never came

to the door during his interaction with Mr. Rainford, thus undermining the suggestion that petitioner may have posed a physical threat during the interaction. (*See* Dkt. 17, Ex. 20 at 70-71.) Counsel was also able to emphasize during cross-examination the fact that Mr. Rainford never saw the knife and that his knowledge of the knife was based solely on his wife's description. (*See id.*, Ex. 20 at 70-2.)

The record before this Court simply does not support petitioner's assertion that the admission of Mr. Rainford's testimony violated his right to a fair trial. Likewise, the record does not demonstrate that defense counsel's failure to object to the testimony constituted deficient performance or resulted in any prejudice. Thus, petitioner's federal habeas petition should be denied with respect to the claims arising out of the testimony of Mr. Rainford.

## Ground Four: Cumulative Error

Petitioner asserts in his fourth ground for relief that the cumulative effect of the errors alleged requires reversal of his conviction. (Dkt. 4 at 51-52.) Even where no single error rises to the level of a constitutional violation, "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). As petitioner fails to establish that any errors occurred, his claim that the accumulation of several errors requires reversal of his conviction necessarily fails. Accordingly, petitioner's federal habeas petition should be denied with respect to his fourth ground for relief.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has

made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

<u>CONCLUSION</u>

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

<u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>June 9 , 2017</u>**.

DATED this <u>17th</u> day of May, 2017.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22